IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALADWORKS, LLC, | | |
| Plaintiff, | | |
| v. | | CIVIL ACTION<br>NO. 13-3764 |
| SOTTOSANTO SALADS, LLC, and KAREN WEBER, | | |
| Defendants. | | |

## MEMORANDUM OPINION

**Schmehl, J.**                                                                           **June 23, 2014**

Before the Court is the Motion to Dismiss for Lack of Jurisdiction, or in the

Alternative, to Transfer Venue filed by Defendants, Sottosanto Salads, LLC, and Karen

Weber ("Defendants") (Docket No. 7). Plaintiff, Saladworks, LLC ("Plaintiff") has

opposed the motion, and Defendants have filed a reply. Also pending is Plaintiff's

Motion to Amend the Complaint. (Docket No. 15), which has been opposed by

Defendants, and Plaintiff has filed a Reply. Having read the parties' briefing, heard the

parties' positions and taken the matter under advisement, I will first grant Plaintiff's

Motion to Amend the Complaint. I will then deny Defendants' Motion to Dismiss or

motion to transfer venue.

### I.        BACKGROUND

Plaintiff filed the Complaint in this matter on June 28, 2013 (Docket

No. 1), setting forth a claim against Defendants for breach of the franchise agreement

entered into by Defendants with Plaintiff for the opening of a Saladworks franchise in

California.

Plaintiff is a franchisor of a restaurant called Saladworks. (Compl., ¶ 6.) In December 2010, Defendant Weber contacted Plaintiff in Pennsylvania regarding operating a Saladworks franchise in California. (Compl. ¶ 7.) Defendant Weber traveled to Pennsylvania for an information session to investigate the Saladworks franchise opportunity. (Maillie Dec. ¶ 5, Docket No. 7, p. 2.) Plaintiff eventually offered Defendant Weber a franchise, which Weber accepted on or about February 21, 2011, when she purchased the franchise rights to three (3) Saladworks franchises in California by signing a Multi-Unit Development Agreement. (Compl., ¶¶ 9-10.) Pursuant to this Multi-Unit Development Agreement, Defendant Weber executed a separate franchise agreement on February 21, 2011 for the operation of a Saladworks franchise in Tustin, California for ten years. (Compl., ¶ 11.) In November of 2011, Defendant Weber executed a second Franchise Agreement. Defendant then travelled to Conshohocken, Pennsylvania, where she received training from Plaintiff in the development and operation of a Saladworks franchise. (Compl. ¶ 12.)

In December of 2011, Defendant Weber assigned both the Multi-Unit Development Agreement and the franchise agreements to Defendant Sottosanto Salads LLC. (Compl. ¶ 13.) The franchise agreement required Defendants to operate a franchise for ten years, pay Plaintiff a royalty on gross sales for ten years, and pay Plaintiff an advertising fee on gross sales for ten years. (Compl., ¶¶ 15-17.) Defendants opened their California franchise on March 23, 2012, and closed it on March 28, 2013. (Compl. ¶ 19.)

## II.   DISCUSSION

Plaintiff seeks to amend its Complaint to plead the existence of a forum selection

clause in its contracts with Defendants. Defendants move to dismiss Plaintiff's claims on the basis of lack of personal jurisdiction. In the alternative, Defendants request transfer of this case to the Central District of California. For the reasons that follow, I grant Plaintiff's Motion to Amend and allow Plaintiff to plead the existence of a forum selection clause in its Complaint. I further find that this Court properly has personal jurisdiction over Defendants. Lastly, after a review of the forum selection clause contained in Plaintiff's contracts with Defendants, I deny Defendants' request to transfer this case to the Central District of California.

### A.  Motion to Amend Complaint

Plaintiff filed a Motion seeking to amend its Complaint pursuant to Fed. R. Civ. P. 15(a)(2), in order to set forth the existence of a forum selection clause as an additional basis for venue to lie in the Eastern District of Pennsylvania. Specifically, Plaintiff claims that due to a recent decision by the United States Supreme Court in Atlantic Marine Construction Co., Inc. v. U.S. District Court for Western District of Texas, 571 U.S. ___, 134 S.Ct. 568 (2013), it now wishes to enforce a forum selection clause found in its agreements with Defendants which designates Pennsylvania as the venue for any dispute between the parties.

Fed. R. Civ. P. 15(a)(2) governs amendment of pleadings and states that in the current situation, a party may "amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The agreements entered into between Plaintiff and Defendants contain a forum selection clause specifying the Eastern District of Pennsylvania as the proper venue for

any disputes arising under the agreements. (<u>See</u> Docket No. 16, Ex. A, p. 44, ¶ 18.3.) Plaintiff alleges that "following a recent Supreme Court decision regarding enforcement of forum selection clauses in commercial contracts," it has "reconsidered its earlier decision not to invoke its forum selection clause." (<u>See</u> Docket No. 16, unnumbered p. 2.)

In <u>Atlantic Marine</u>, the United States Supreme Court found that "when the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause rather than "evaluate the convenience of the parties and various public interest considerations" as would be done in a "typical case not involving a forum-selection clause." 134 S.Ct. at 581. The presence of a valid forum-selection clause alters the typical analysis under § 1404(a) in three ways: 1) "the plaintiff's choice of forum merits no weight," 2) the court "should not consider arguments about the parties' private interest," and 3) the court to which the action is transferred should not apply "the original venue's choice-of-law rules." <u>Id.</u> at 581-83.

A thorough reading of <u>Atlantic Marine</u> shows that its analysis regarding the power of a forum selection clause applies only where the "parties' contract contains a *valid* forum-selection clause." <u>Id.</u> at 581 (emphasis added). Therefore, <u>Atlantic Marine</u> only applies to enforce the parties' forum selection clause in this matter if the clause itself is valid. I must first determine the validity of the clause before I address whether Plaintiff should be permitted to amend its Complaint to plead the existence of this clause.

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law…[b]ecause questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature…" <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 877 (3d Cir. 1995)

(citation omitted); <u>Feldman v. Google, Inc.</u>, 513 F.Supp.2d 229, 235 (E.D. Pa. 2007).
Under federal law, forum selection clauses are presumptively valid and enforceable
"unless enforcement is shown by the resisting party to be 'unreasonable' under the
circumstances." <u>M/S Breman v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10, 92 S.Ct. 1907, 32
L.Ed.2d 513 (1972). "A forum selection clause will be invalidated only if the resisting
party can show 1) the clause was invalid for such reasons as fraud or overreaching, or 2)
enforcement of the clause would contravene a strong public policy of the forum in which
the suit is brought, or 3) enforcement of the clause would be so gravely difficult and
inconvenient as to be unreasonable and unjust and that it would deprive the party of its
day in court." <u>Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur
Industrieversicherungen</u>, 188 F.Supp.2d 454, 458 (D.N.J. 2001)(citing <u>Bremen</u>, 407 U.S.
at 10, 15, 18).

In the instant matter, Defendants do not allege any fraud or overreaching on the
part of Saladworks that would render the forum selection clause in question
unenforceable. Nor do they allege that enforcement of the forum selection clause would
be so difficult and inconvenient that it would effectively deprive them of their day in
court. Rather, Defendants argue that the forum selection clause in question is invalid
because it conflicts with California law and contravenes California public policy against
enforcing any out of state forum selection clause in a franchise agreement involving a
California franchisee operating in California.

<u>Bremen</u> requires a court to examine whether the enforcement of a forum selection
clause would contravene a "strong public policy of the forum in which the suit is
brought." <u>Bremen</u>, 407 U.S. at 15. <u>Bremen</u> does not require a court to examine the public

policy of the forum in which the suit **could have been brought**. The public policy of California is not to be considered in an analysis of the validity of the instant forum selection clause.  Rather, I must look at the public policy considerations of Pennsylvania, the forum in which this suit was brought, to determine if enforcement of the forum selection clause would contravene Pennsylvania public policy.

All of the agreements entered into between Plaintiff and Defendants contain a forum selection clause that states that "the parties expressly agree to submit to the jurisdiction and venue of any court of general jurisdiction in Montgomery County, Pennsylvania, and the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania." (Docket No. 19, Exs. 1, 2 and 3, pp. 30, 88, 151, ¶¶ 16.3 and 18.3.)  First, this forum selection clause does not violate any public policy of Pennsylvania.  Further, it is consistent with the "public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement." Feldman v. Google, Inc., 513 F. Supp.2d at 247.

Defendants argue that California Business & Professions Code § 20040.5 states that a "provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state," and that the forum selection clause is therefore invalid. As pointed out by my colleague Judge Pratter in Maaco Franchising, Inc. v. Tainter, No. 12-cv-5500, 2013 WL 2475566, * 4 (E.D. Pa., June 10, 2013), of the few federal courts outside of California who have considered the argument that California public policy requires litigation of a franchise matter in California despite the existence of a forum selection clause, "the majority have not invalidated forum

selection clauses or opted to transfer cases to California pursuant to Section 20040.5."
Maaco Franchising, 2013 WL 24755566 at * 4 (cases omitted). In this case, the plain
language of the parties' agreement shows that the parties clearly contemplated suit being
brought in Pennsylvania. Further, Defendants cannot show that enforcement of the forum
selection clause would be unreasonable. Therefore, I find that the forum selection clause
in question is valid. Accordingly, I will permit Plaintiff to amend its Complaint to plead
the existence of the forum selection clause.

### B.  Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure grants district courts personal
jurisdiction over non-resident defendants to the extent permitted by the law of the state in
which the district court sits.  See Fed. R. Civ. P. 4(e). In Pennsylvania, the applicable
long-arm statute authorizes personal jurisdiction over non-resident defendants to be
exercised to the "fullest extent allowed under the Constitution of the United States." 42
Pa. C.S.A. § 5322(b). A district court has personal jurisdiction over a non-resident so
long as the defendant has "certain minimum contacts with [the forum] such that the
maintenance of the suit does not offend traditional notions of fair play and substantial
justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction: general and specific. Helicopteros
Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction
requires the defendant to have maintained "continuous and systematic" contacts with the
forum state. Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d
587, 588 (3d Cir. 1982). In order for a district court to have specific jurisdiction over a
defendant, the defendant's contacts with the forum state must be such that defendant

"should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In order for a district court to properly exercise specific jurisdiction, the plaintiff must satisfy a two-part test. First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Second, the court must determine whether the exercise of jurisdiction "would comport with 'traditional notions of fair play and substantial justice.'" See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 150–51 (3d Cir. 1996) (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)). To satisfy the first prong of the test and show sufficient minimum contacts with the forum state, Plaintiff must show that Defendants have "purposefully directed [their] activities" at the forum. See Burger King, 471 U.S. at 472.

### 1. Minimum Contacts

The facts in this matter show that Defendants have sufficient minimum contacts with Pennsylvania to exercise personal jurisdiction over them. It is undisputed that Defendant Weber contacted Plaintiff in December 2010 to "express her interest" in developing a Saladworks franchise in California. (Compl. ¶ 7, Def's Br in Supt of Mtn to Dismiss, pp. 1-2.) Defendant Weber then traveled to Pennsylvania to meet with representatives of Plaintiff and learn about franchise opportunities. (Maillie Dec. ¶5, Def's Br in Supt of Mtn to Dismiss, p. 2.) After entering into a 10-year franchise contract with Plaintiff, Defendant Weber, along with family members, returned to Pennsylvania for 25 days of franchise training. (Maillie Dec. ¶ 14, Def's Br in Supt of Mtn to Dismiss, p. 2.)

Defendant Weber visited Pennsylvania on two occasions, once for a meeting in which she explored the franchise opportunities and once for franchise training that lasted 25 days. Further, Defendants entered into a franchise contract with a Pennsylvania corporation, a "contract which had a substantial connection" with Pennsylvania. Burger King, 471 U.S. at 479-80. Clearly, Defendant Weber's two trips to Pennsylvania constitute "purposeful availment," especially when one considers the length of the second training trip. In light of Defendants' contacts with the forum state, it is clear that Plaintiff has satisfied its burden of setting forth a *prima facie* case that Defendants intentionally directed their activities at Pennsylvania.

## 2.  Fair Play and Substantial Justice

Once a plaintiff has established that the defendant has minimum contacts, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. In assessing whether jurisdiction offends traditional notions of fair play and substantial justice:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 113 (1987).

Defendants fail to present a compelling case that this Court's jurisdiction over them would not comport with the notions of fair play and substantial justice. Defendants argue that most of the witnesses in this matter, including Defendants, reside in California, that the Defendants are financially incapable of litigation in Pennsylvania, cannot

effectively litigate in both Pennsylvania and California, where they have filed their own action against Saladworks, and that it would be more convenient to litigate both matters in California. Defendants also argue that Plaintiff can just as easily obtain relief for its claim for breach of contract in California as in Pennsylvania, and that Defendants' California action is based upon Plaintiff's violations of California law, as their primary defense to Plaintiff's breach of contract claim will be that the franchise agreement was unlawful under California law. Accordingly, Defendants argue that the issue of whether such violations occurred is best suited to be resolved in California.

I have reviewed Defendants' arguments and find that any potential burden that might be imposed upon them is outweighed by the need for Plaintiff to receive the benefit of the parties' agreement to litigate in this forum. Even though this may not be the best or most convenient forum for Defendants, it certainly is a reasonable one. Therefore, the Court's assertion of personal jurisdiction over Defendants' claims comport with traditional notions of fair play and substantial justice. Accordingly, jurisdiction over Defendants has been established and Defendants' Motion to Dismiss due to lack of jurisdiction is denied.

### C. <u>Motion to Transfer Venue</u>

Defendants request that this matter be transferred to the Central District of California, as a related action has been filed there by Weber and Sottosanto Salads against Saladworks. Neither party disputes that venue of this matter would be proper in the Central District of California, as all defendants reside in California and substantial acts giving rise to the cause of action occurred there.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In a typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations. <u>Id.</u> at 581. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" <u>Id.</u> (quoting <u>Stewart Org. Inc.</u>, 487 U.S. at 31). As stated by the Supreme Court, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" <u>Atlantic Marine</u>, 134 S.Ct at 581, <u>citing</u> <u>Stewart Org., Inc. v. Ricoh Corp</u>, 487 U.S. 22, 33, 108 S.Ct. 2239 (Kennedy, J., concurring).

Where, as in the instant matter, there is a valid forum selection clause, a district court's usual § 1404(a) analysis is adjusted. <u>Id.</u> First, courts may accord no weight to a party's chosen forum and "[s]econd, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." <u>Id.</u> at 582. The Supreme Court stated that the parties, in agreeing to a forum-selection clause, have waived "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," and the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." <u>Id.</u> The public interest factors which the Court may still consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in

having the trial of a diversity case in a forum that is at home with the law." Id. (quoting

Piper Aircraft, 454 U.S. at 241 n. 6). "In all but the most unusual cases, therefore, 'the

interest of justice' is served by holding parties to their bargain." Id. at 583.

Therefore, as a valid forum selection clause exists in this matter, my analysis of a

transfer under §1401(a) must change as set forth in Atlantic Marine. Plaintiff's choice of

forum and all private interest considerations become irrelevant and I must only consider

the public-interest factors. Atlantic Marine, supra, at 581–82. In arguing for a transfer to

California, Defendants give numerous reasons why they believe it would be more

practicable and equitable to litigate the parties' dispute in California rather than

Pennsylvania.

The public interest factors that I must examine are the difficulties arising from

court congestion, the local interest in having localized controversies decided at home, and

the interest in having the trial of a diversity case in a forum that is at home with the law.

Id. In arguing the public interest factors, Defendants argue that the issues in this case turn

on Plaintiff's alleged violation of the California Franchise Investment Law and the

California Code of Regulations and therefore should be litigated in California.

Defendants argue that the obligations contained in the CFIL are an "important

manifestation of the public policy of the State of California concerning the offer and sale

of franchise opportunities to California residents, inclusive of out-of-State franchisors

such as Plaintiff who choose to sell franchises in California." (Docket No. 7, p. 15.)

Defendants further argue that the application of the CFIL and CCRs are unique to

California and are not present in any form in Pennsylvania law.

First, Defendants have made no argument that cases are resolved more quickly in the Central District of California than they are in the Eastern District of Pennsylvania. Further, although Defendants' argument that California has a significant interest and strong public policy in deciding a controversy involving a California franchisee operating a franchise in California with an out of state franchisor may be correct, I find that Pennsylvania has an equal interest in deciding an agreement that was entered into by an entity that has its principal place of business in Pennsylvania. In addition, Defendants have not alleged that this Court is not "at home with the law" in this matter, and there is no reason to believe that I cannot properly apply the law to the facts of this case.

Considering Defendants' arguments in favor of transfer based upon the public interest, I find that Defendants have failed to meet their heavy burden to show that this motion to transfer should be granted due to "extraordinary circumstances unrelated to the convenience of the parties." Atlantic Marine at 581. Clearly this case is not "most exceptional." Therefore, I find that the public interests do not weigh in favor of transferring this matter to California. Accordingly, Defendants' Motion to Transfer Venue is denied.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend its Complaint is granted, and Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer Venue is denied.